UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

JOHN CHERRY

VERSUS

SHAW COASTAL, INC., ET AL.

CIVIL ACTION

NO. 08-228-JJB

**RULING AND ORDER**

This matter is before the Court on motions for judgment as a matter of law, urged by Defendants, Shaw Coastal, Inc. ("Shaw Coastal"), and Michael Reasoner, at the close of evidence and renewed after the jury returned a verdict. The Court took these motions under advisement; no additional briefing is necessary. After careful review of the evidence presented at trial and applicable law, the Court GRANTS Shaw Coastal's motion and DENIES Reasoner's motion.

**Background**

After four full days of trial, the Court submitted to the jury three claims: (1) Cherry's claim of hostile work environment/sexual harassment by a co-worker against Shaw Coastal; (2) Cherry's claim of battery against Reasoner; and, (3) Reasoner's claims of defamation against Cherry and Third Party Defendant Scott Thornton.[1]  The jury found Shaw Coastal liable for hostile work environment/ sexual harassment, Reasoner liable for battery, and that Reasoner's defamation claims were prescribed.

---

[1] The Court had previously granted Rule 50 motions regarding all other claims.

**Law**

After a party has been fully heard on an issue during a jury trial, the court may enter a judgment as a matter of law on that particular claim or defense. Fed. R. Civ. P. 50(a)(1). The court must find that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue. *Id.* The burden is upon the party moving for the judgment as a matter of law and the court must view all the evidence in the light most favorable to the non-movant. *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 222 (5th Cir. 2000). In considering a motion for judgment as a matter of law, the court cannot make credibility determinations or weigh the evidence. *Id.* at 222; *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150 (2000). But, the court shall review all the evidence in the record. *Reeves*, 530 U.S. at 150.

If a motion for judgment as a matter of law is not granted at the close of evidence, then the claims go to the jury "subject to the court's later deciding the legal questions raised by the motion." Fed. R. Civ. P. 50(b). "A motion for judgment as a matter of law . . . in an action tried by jury is a challenge to the legal sufficiency of the evidence supporting the jury's verdict." *Hiltgen v. Sumrali*, 47 F.3d 695, 699 (5th Cir. 1995). A motion for judgment as a matter of law should be granted only when "the facts and inferences point so strongly in favor of the movant that a rational jury could not reach a contrary verdict." *Pineda v. United Parcel Serv., Inc.*, 360 F.3d 483, 486 (5th Cir. 2004).

**Analysis**

*I. Hostile Work Environment Sexual Harassment by a Co-worker*

For claims of same-sex sexual harassment, a plaintiff must provide evidence "that the conduct at issue was not merely tinged with offensive sexual connotations, but actually constituted discrimination because of sex." *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998). Once a plaintiff does so, he must then provide evidence that the alleged conduct meets the standards for either a *quid pro quo* or a hostile work environment claim. *La Day v. Catalyst Tech., Inc.*, 302 F.3d 474, 478 (5th Cir. 2002). Because this Court previously dismissed the *quid pro quo* claim on summary judgment, Cherry had to provide evidence that the sexual discrimination created a hostile work environment. For his hostile work environment claim, Cherry had to show that: (1) he belongs to a protected group; (2) he was subjected to unwelcome sexual harassment; (3) the harassment complained of was based on sex; and (4) it affected a term, condition, or privilege of employment. *See Russell v. Univ. of Tex. of the Permian Basin*, 234 Fed. App'x 195, 204 (5th Cir. 2007).

   a. Discrimination Because of Sex

Discrimination does not automatically arise because words have sexual content or connotations, but occurs when "members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed." *Oncale*, 523 U.S. at 80. The Supreme Court has set

forth three methods of proving that the harassment amounts to cognizable sexual harassment; the only method relevant here is for the plaintiff to show that the harasser made explicit or implicit proposals of sexual activity and provide credible evidence that the harasser was homosexual.  *See id.* at 80; *La Day*, 302 F.3d at 478.  Thus, in order to show sexual discrimination, Cherry had to provide evidence of both a sexual proposal and that Reasoner was homosexual.

Regarding a sexual proposal, there was no evidence that Reasoner explicitly asked Cherry to engage in sexual relations, which leaves only the question of whether Reasoner's actions were implicitly suggestive proposals for sex.  *See Love v. Motiva Enterprises, LLC*, 349 Fed. App'x 900, 902 (5th Cir. 2009).  Regarding whether Cherry presented credible evidence that Reasoner is a homosexual, the Fifth Circuit has noted that there are numerous ways to prove homosexuality, the two most credible ways being to provide (1) evidence that the harasser intended to have some kind of sexual contact with the plaintiff rather than merely to humiliate him for reasons unrelated to sexual interest; or, (2) evidence that the alleged harasser made same-sex sexual advances to others, especially to other employees.  *La Day,* 302 F.3d at 479.  There was absolutely no evidence of Reasoner making sexual advances toward others.  Thus, the Court must determine whether Cherry provided credible evidence that Reasoner intended to have some kind of sexual conduct with Cherry.

The only evidence offered for these purposes are the episodes of harassment themselves.  Of these, the sexually tinged conduct includes a

4

statement that Cherry was not a bad looking guy for his age; a statement that Cherry should take his shirt off, cut off his jeans, or wear shorts; a text message stating "I want cock"; a text message in the form of a love poem; a text message stating "you're missing the dipper";[2] one incident where Cherry bent over and Reasoner put his hand on Cherry's bottom; a few times when Reasoner put his hand on Cherry's knee or thigh; several instances where Reasoner rubbed Cherry's shoulders and stroked his hair; and Reasoner's statement that if Cherry spent the night at his house he could wear his clothes/underwear.

As testified to in court, the poem is a message available on the internet that Reasoner sent to numerous friends at the same time he sent it to Cherry. The poem, which ends with a line stating "aww shit I got the wrong number," is clearly a joke and any reasonable person would have taken it as such. Regardless, Cherry testified that he did not interpret the poem as a solicitation for sex. The other two messages, although regarding sexual matters, are not propositions. The invitation to spend the night at Reasoner's house, offered at least in part to save driving long distances, does not amount to a sexual proposal. Thus, Cherry provided no evidence that he believed Reasoner was propositioning him. *See Noto v. Regions Bank*, 84 Fed. App'x 399, 402 (5th Cir. 2003). In fact, when Cherry received these messages he knew Reasoner was in a heterosexual marriage. *See id.* (noting that the plaintiff was unsure whether the alleged harasser "was even homosexual").

---

[2] Cherry testified that the word "dipper" referred to Reasoner's penis.

5

Without more, this conduct by itself does not amount to evidence establishing that Reasoner has a sexual interest in men. *See Love*, 349 Fed. App'x at 902 (finding that similar behavior was part of the defendant's more general insulting conduct); *Pedroza v. Cintas Corp. No. 2*, 397 F.3d 1063, 1069 (8th Cir. 2005) (finding that attempted kissing and sexually implicit statements, done by a divorcee with children, did not create a triable issue as to homosexuality); *McCown v. St. John's Health Sys.*, 349 F.3d 540, 543 (8th Cir. 2003) (finding that much more sexually vulgar behavior did not demonstrate a motive of sexual desire). Reasoner's conduct was sexually tinged and certainly juvenile, but the record does not reflect that it was based on Cherry's gender. Therefore, Reasoner did not provide sufficient evidence to create a triable question of fact for the jury.

  b. Severe or Pervasive

Even if Cherry could, in some way, establish that Reasoner's actions were motivated by Cherry's sex, his claim would still fail because he did not provide legally sufficient evidence of a hostile work environment. As part of a claim for hostile work environment, a plaintiff must prove that the harassment affected a term, condition, or privilege of employment; he does so by showing that the conduct was severe or pervasive. *La Day*, 302 F.3d at 482. "The objective severity of harassment should be judged from the perspective of a reasonable person in the plaintiff's position." *Oncale*, 523 U.S. at 81. Such a requirement

prevents "male-on-male horseplay" from being construed as discrimination. *Id.* "Common sense, and an appropriate sensitivity to social context, will enable courts and juries to distinguish between simple teasing or roughhousing among members of the same sex, and conduct which a reasonable person in the plaintiff's position would find severely hostile or abusive." *Id.* at 82.

Critical, here, is that a reasonable person must find the conduct severe or pervasive. This standard depends on all the circumstances, including the frequency of the discriminatory conduct, its severity, whether it is physically threatening or humiliating, or a mere offensive utterance, and whether it unreasonably interferes with an employee's work performance. *La Day*, 302 F.3d at 482. A foray into Fifth Circuit precedent illustrates when conduct can be said to rise to the legal level of severity or pervasiveness.

In *Russell*, the Fifth Circuit upheld summary judgment in favor of the defendant by finding that the following conduct was not severe or pervasive:

> Dr. Russell alleges that, on one occasion each, Dr. Watson rubbed the side of her hand and her thigh; that Dr. Watson twice intimated that she wanted to move to New York City with Dr. Russell; that Dr. Watson once stated that she would not mind watching a movie in bed with Dr. Russell; and that Dr. Watson called her "honey" or "babe" on numerous occasions.

234 Fed. App'x at 205. The *Russell* court found that these allegations were on the same plane as those in *Hockman v. Westward Communications, LLC*, 407 F.3d 317, 327-28 (5th Cir. 2004). In *Hockman*, a male-female harassment case, the Fifth Circuit found that the following conduct did not rise to the legal level of severe or pervasive:

> [Rogers] once made a remark to Hockman about another employee's body, he once slapped her on the behind with a newspaper, he "grabbed or brushed" against Hockman's breasts and behind, he once held her cheeks and tried to kiss her, he asked Hockman to come to the office early so that they could be alone, and he once stood in the door of the bathroom while she was washing her hands.

*Id.* at 328 (internal numbering omitted).  There, the Fifth Circuit found that those allegations were not as egregious as allegations made in other cases.  *See id.* at 326.  For example, in *Shepherd v. Comptroller of Public Accounts*, the Fifth Circuit found that the following facts did not arise to the legally required level of severity or pervasiveness:

> [O]n one occasion Moore stood in front of Shepherd's desk and remarked "your elbows are the same color as your nipples." . . . Moore remarked once "you have big thighs" while he simulated looking down her dress . . . Moore stood over her desk on several occasions and attempted to look down her clothing . . . Moore touched her arm on several occasions, rubbing one of his hands from her shoulder down to her wrist while standing beside her . . . [O]n two occasions, when Shepherd looked for a seat after coming late to a meeting, Moore patted his lap and remarked "here's your seat." . . . The conduct about which Shepherd complains allegedly took place for almost two years.

168 F.3d 871, 872 (5th Cir. 1999).

The conduct at issue here, if taken at its worst, is no more severe or pervasive than that outlined in the above cases.  It certainly is a long way from conduct that the Fifth Circuit has found severe or pervasive.  *See, e.g., Farbella-Crosby v. Horizon Health Care*, 97 F.3d 803, 805 (5th Cir. 1996) (including comments about the frequency of her sexual activity that occurred so often "that she could not possibly remember each instance"); *Waltman v. Int'l Paper Co.*, 875 F.2d 468, 471 (5th Cir. 1989) (where "eighty percent of the men in [plaintiff's]

work place had made sexual comments to her at some point, and a week did not go by without such comments being made").

Here, the text messages and comments, although juvenile and boorish, were "the equivalent of a mere utterance of an epithet that engender[s] offensive feelings." *Shepherd*, 168 F.3d at 874 (citing *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993)). The touching happened, at most, during a total of fourteen days that Cherry and Reasoner worked together on job sites. It never involved touching of the genitalia. It never involved Cherry insulting Reasoner. The fact that Cherry is overly sensitive to homoerotic teasing, if not homophobic, does not change teasing into severe or pervasive sexual harassment.[3] *See Fifth Circuit Labor & Employment Law Pattern Jury Charges* § 11.4.3 (2009) (stating that one "cannot view the evidence from the perspective of an overly sensitive person").

Thus, the Court finds that from the perspective of a reasonable person, the facts presented in this case cannot rise to the requisite legal level of severity or pervasivness and that no reasonable juror could find otherwise.

---

[3] At least one witness testified that Cherry was homophobic. A reasonable person is not homophobic, just as a reasonable person is not racist, anti-Semitic, anti-Papal, nor a person holding any number of beliefs that would make him overly sensitive to certain conduct. As to Cherry's sensitivity, it was evident through Cherry's taking offense to text messages such as, "Y didnt u drive your truck to work," and, "U taking a shit?" (which he received while in the bathroom). When suggested that Reasoner's conduct amounted to horsing around, Cherry responded that it was not horsing around to him and that he did not want to horse around. Title VII is not, however, a general civility code and simply because Cherry did not like Reasoner's conduct does not make it severe or pervasive.

c. Prompt Remedial Action

Finally, even had this conduct arisen to a cognizable level of severity and pervasiveness, Shaw Coastal took prompt remedial action that brought an end to the sexual conduct. If a company, upon notification of allegations of sexual harassment, takes prompt remedial action to protect the complaining employee, the company may avoid Title VII liability. *Nash v. Electrospace Sys., Inc.*, 9 F.3d 401, 402 (5th Cir. 1993).

Cherry testified that he reported this conduct to his supervisor, Michael D'Angelo, on May 2, 3, 6, 7, and 22, 2007. In an email, he stated that on May 22, he informed D'Angelo that he would like to make a complaint *if Reasoner did anything else.* On May 29, Reasoner coughed at Cherry to get his attention; this was the last straw, causing Reasoner to go to D'Angelo and make his complaint. D'Angelo took the complaint to his supervisor, Jeff Pena, who forwarded it to Human Resources that same day.

Regardless of when Cherry made an official complaint to D'Angelo, it is undisputed that he did not bring his complaint to Human Resources; instead, Jeff Pena communicated it to Human Resources on May 29. This fact is key because Shaw Coastal's sexual harassment policies and procedures, which Cherry received and acknowledged reading and understanding, clearly state, "In the event the Employee reports the matter to his or her supervisor and does not feel that the complaint has been investigated or handled appropriately within a reasonable time, the Employee should directly report such to the Human

Resources Vice President or Director of Compliance."[4]  Thus, if he was not happy with the way D'Angelo handled his complaints, Cherry had a duty to bring these allegations to Human Resources.  *See Hockman*, 407 F.3d at 329 (affirming summary judgment where the plaintiff, who was unsatisfied with her supervisor's response, did not report the allegations directly to Human Resources, and thus could not prove the company "failed to take prompt remedial action [because] she unreasonably failed to take advantage of corrective opportunities provided by [the company]").

Also key is the fact that once these allegations were delivered to the Human Resources department, no further *sexual* conduct occurred, and no conduct that could be deemed severe or pervasive occurred.  Cherry and Reasoner never again worked on a job site together.  After they stopped working in the field together, the complained of conduct included Reasoner "flipping off" Cherry, laughing at him, staring at him, and coughing to get his attention when they were in the office.  This conduct is not sexual.  Therefore, it is evident that once Human Resources became involved, the alleged *sexual* harassment ceased.  Finally, after Shaw Coastal verified that Reasoner butted his shoulder into Cherry in the hallway, Shaw Coastal terminated Reasoner for retaliation, thereby further protecting Cherry from any future unwanted conduct.  Thus, Cherry did not present evidence to establish a triable fact as to whether Shaw Coastal took prompt remedial action to protect Cherry from further conduct.

---

[4] Shaw Coastal Ex. 4.

*II. Battery*

Under Louisiana law, battery is defined as intentional harmful or offensive contact with a person. *Caudle v. Betts*, 512 So. 2d 389, 391 (La. 1987). The actor need not act with malice or with an intent to inflict actual damage; it is enough if he intends to inflict an offensive contact without consent. *Id.*

The evidence presented, taken in a light most favorable to Cherry, establishes that Reasoner made physical contact with Cherry on more than one occasion. Reasoner carried on with these contacts even after Cherry asked him to stop. Furthermore, Cherry presented evidence that Reasoner intentionally drove his shoulder into Cherry as they passed each other in the hall. Although no physical harm occurred, a person "is liable not only for contacts that do actual physical harm, but also for those relatively minor ones, which are merely offensive or insulting." *Id.*

Because the evidence established a triable fact as to whether Reasoner's actions amounted to battery, the Court finds that this is a question that was rightly submitted to the jury.

## **Conclusion**

The Court finds that there were not legally sufficient evidentiary bases for a jury to find that Reasoner's conduct was because of Cherry's sex, the conduct was severe or pervasive, or Shaw Coastal failed to take prompt remedial actions.

The Court further finds that there was a legally sufficient evidentiary basis for a jury to find that Reasoner's conduct constituted battery.

Accordingly, the Court GRANTS Shaw Coastal's motion for judgment as a matter of law and DENIES Reasoner's motion for judgment as a matter of law.

IT IS ORDERED that the aspect of the jury verdict regarding Reasoner's claim against Shaw Coastal for sexual harassment by a co-worker and damages attributed to this claim is hereby VACATED.

Signed in Baton Rouge, Louisiana, on August 3, 2010.

_____
**JUDGE JAMES J. BRADY**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**