United States District Court
Middle District of Louisiana

RECEIVED
MAR 09 2012
U.S. DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA
DEPUTY CLERK

**United States Court of Appeals**
FIFTH CIRCUIT
OFFICE OF THE CLERK

LYLE W. CAYCE
CLERK

**FILED**
3/9/2012

TEL. 504-310-7700
600 S. MAESTRI PLACE
NEW ORLEANS, LA 70130

March 07, 2012

Mr. Nick Lorio
U.S. District Court, Middle District of Louisiana
777 Florida Street
Baton Rouge, LA 70801

    USCA No. 11-30403,   John Cherry v. Shaw Coastal,
                               Incorporated
       USDC No. 3:08-CV-228

Enclosed, for the district court only, is a copy of the judgment issued as the mandate.

Enclosed, for the district court only, is a copy of the court's opinion.

Record/original papers/exhibits are returned:

( 1 ) Sealed Envelope    ( 1 ) Box

Enclosed for the district court and counsel is the approved bill of costs.

The electronic copy of the record has been recycled.

                          Sincerely,

                          LYLE W. CAYCE, Clerk

                          By: /s/ Sabrina B. Short
                          Sabrina B. Short, Deputy Clerk
                          504-310-7817

cc: (letter only)
    Honorable James J. Brady
    Ms. Jill Leininger Craft
    Mrs. Renee G. Culotta
    Ms. Leslie W. Ehret
    Mr. James Mark Tucker
    Ms. Rae Thiesfield Vann

P.S. to Judge Brady:  A copy of the opinion was sent to your office via email the day it was filed.

Print Form

UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

# BILL OF COSTS

NOTE: The Bill of Costs is due in this office *within 14 days from the date of the opinion*, See FED. R. APP. P. & 5TH CIR. R. 39. Untimely bills of costs must be accompanied by a separate motion to file out of time, which the court may deny.

John Cherry _____ v. Shaw Coastal, Inc. _____ No. 11-30403

The Clerk is requested to tax the following costs against: Defendant, Shaw Costal, Inc. _____

| COSTS TAXABLE UNDER Fed. R. App. P. & 5th Cir. R. 39 | REQUESTED | | | | ALLOWED (If different from amount requested) | | | |
|---|---|---|---|---|---|---|---|---|
| | No. of Copies | Pages Per Copy | Cost per Page* | Total Cost | No. of Documents | Pages per Document | Cost per Page* | Total Cost |
| Docket Fee ($450.00) | | | | 455 | | | | 450 |
| Appendix or Record Excerpts | 11 | 53 | 0.09 | 52.47 | 11 | 45 | .09 | 44.55 |
| Appellant's Brief | 13 | 63 | 0.09 | 73.71 | 13 | 51 | .09 | 59.67 |
| Appellee's Brief | | | | | | | | |
| Appellant's Reply Brief | | | | | | | | |
| Other: | | | | | | | | |
| | | | Total $ | 581.18 | | Costs are taxed in the amount of $ | | 554.22 |

Costs are hereby taxed in the amount of $ 554.22 this 7th day of March, 2012.

State of _____
County of East Baton Rouge Parish _____

LYLE W. CAYCE, CLERK
By _____
Deputy Clerk

I Jill L. Craft _____, do hereby swear under penalty of perjury that the services for which fees have been charged were incurred in this action and that the services for which fees have been charged were actually and necessarily performed. A copy of this Bill of Costs was this day mailed to opposing counsel, with postage fully prepaid thereon. This 26th day of January, 1012.

s/Jill L. Craft
(Signature)

*SEE REVERSE SIDE FOR RULES
GOVERNING TAXATION OF COSTS

Attorney for John Cherry _____

# Invoice



**QUALITY LITIGATION SUPPORT, INC.**
214 3RD STREET, SUITE A
BATON ROUGE, LA 70801-1304
(225) 334-9327

| DATE | INVOICE # |
|---|---|
| 5/18/2011 | 106655 |

PAID 06/11/201?

**BILL TO**

JILL L. CRAFT
ATTORNEY AT LAW
611 NORTH STREET
BATON ROUGE, LA 70802

**SHIP TO**

JILL CRAFT

RE: John Cherry

| P O NUMBER | TERMS | REP | SHIP | VIA | F O B | PROJECT |
|---|---|---|---|---|---|---|
| | Due on receipt | | 5/18/2011 | HAND DELI... | | |

| QUANTITY | ITEM CODE | DESCRIPTION | PRICE EACH | AMOUNT |
|---|---|---|---|---|
| 746 | STRAIGHT RUN | STRAIGHT RUN COPYING | 0.09 | 67.14T |
| 30 | TABS | ALPHA-NUMERIC TABS | 0.25 | 7.50T |
| 17 | GBC | GBC BINDING | 2.50 | 42.50T |
| | | 9% state and city combined | 9.00% | 10.55 |

Questions concerning invoice call 225-334-9327  TAX ID 72-1440333

**TOTAL** $127.69

605304 (12/10)

UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**
January 19, 2012

Lyle W. Cayce
Clerk

No. 11-30403

D.C. Docket No. 3:08-CV-228

JOHN CHERRY,

    Plaintiff - Appellant

v.

SHAW COASTAL, INCORPORATED,

    Defendant - Appellee

Appeal from the United States District Court for the
Middle District of Louisiana, Baton Rouge

Before HIGGINBOTHAM, DAVIS and STEWART, Circuit Judges.

JUDGMENT

This cause was considered on the record on appeal and was argued by counsel.

It is ordered and adjudged that the judgment of the District Court is vacated, and the cause is remanded to the District Court for further proceedings in accordance with the opinion of this Court.

IT IS FURTHER ORDERED that Appellee pay to Appellant the costs on appeal to be taxed by the Clerk of this Court.

ISSUED AS MANDATE: MAR 0 7 2012

A True Copy
Attest

Clerk, U.S. Court of Appeals, Fifth Circuit

By: _Sabrina B Short_
           Deputy   MAR 0 7 2012

New Orleans, Louisiana

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**
January 19, 2012

Lyle W. Cayce
Clerk

No. 11-30403

JOHN CHERRY

Plaintiff - Appellant

v.

SHAW COASTAL, Inc.

Defendant - Appellee

Appeal from the United States District Court
for the Middle District of Louisiana

Before HIGGINBOTHAM, DAVIS and STEWART, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge:

Plaintiff John Cherry appeals the district court's entry of judgment as a matter of law as to his claims of sexual harassment, retaliation, loss of overtime, and for punitive damages. We conclude that the district court correctly found that Cherry did not present sufficient evidence to support his claims for retaliation, loss of overtime and punitive damages, but that the evidence presented did support the jury's conclusion that Cherry was sexually harassed and that his employer failed to promptly respond to the harassment. We therefore VACATE the district court's grant of judgment as a matter of law and remand to the district court with directions to enter judgment on those claims consistent with the verdict.

No. 11-30403

I.

Plaintiff John Cherry (Cherry) was an employee of Shaw Coastal, an engineering firm. During his employment with Shaw Coastal, Cherry worked as an instrument man on a survey crew with Michael Reasoner (Reasoner) and Scott Thornton (Thornton). Thornton was Cherry's direct supervisor, and Reasoner was Thornton's supervisor.

In March 2007, shortly after Cherry began working on the survey crew, Reasoner began brushing against him in a way that made him uncomfortable. Reasoner would ask Cherry to take his shirt off and to wear cut-off jean shorts, and suggest that Cherry should take his pants off to try to get a tan. During this period Reasoner would also regularly comment on Cherry's looks, despite Cherry telling Reasoner that he should keep his comments to himself.

In April 2007, Reasoner began sending Cherry text messages. On April 19, Reasoner sent Cherry a text message saying "I want cock." On April 20, Reasoner sent Cherry a text message that said "ur 2 sexy. U drive me insane . . . . Ur sexy voice puts me to slumber." On May 7, he sent Cherry a text message that said "your missing the dipper," which was a term he had previously told Cherry he used to refer to his penis. Cherry repeatedly told Reasoner that he did not want to speak to him.

During this period, Reasoner regularly touched Cherry. When Cherry was driving the boat to survey sites, Reasoner would touch Cherry's leg and shoulder and rub his hair. On one occasion, when Cherry bent over to put a chain on the boat, Reasoner "put his hand on his butt," and Thornton had to intervene to keep Cherry from striking Reasoner.

2

When Cherry fell asleep in the passenger seat of the truck on the way to survey sites, Reasoner would run his hands through Cherry's hair and rub his shoulders. Reasoner's conduct made Thornton so uncomfortable that Thornton preferred Reasoner to drive so that he would not be able to touch Cherry. Thornton described Reasoner as touching Cherry "like I do my wife."

In late May, Reasoner asked Cherry to stay over at his house rather than going home after a long drive. When Cherry declined, saying that he did not have a change of clothes, Reasoner said, "You don't need to wear any clothes. You can wear my underwear."

Thornton initially complained to Shaw Coastal in March, reporting the physical conduct that he had witnessed to Michael D'Angelo (D'Angelo), the project manager supervising their survey crew. On May 1, Thornton reported the harassment to Jeff Pena (Pena), D'Angelo's supervisor. Shaw Coastal took no action, and neither Pena nor D'Angelo reported the complaints to human resources, despite Shaw Coastal's policy requiring that such complaints be reported.

On May 2 or 3, Cherry complained to D'Angelo about Reasoner. D'Angelo questioned whether this was a serious issue or if Reasoner was just "horsing around." About five days later, Cherry complained to D'Angelo again, and offered to show him the text messages Reasoner had sent him. D'Angelo refused to look at the text messages. Finally, around May 22, Cherry told D'Angelo he did not want to continue working with Reasoner, and D'Angelo arranged for them to work in different crews.

On May 29, Cherry reported to D'Angelo via email that he was still "getting looks" from Reasoner that made him uncomfortable. He then went

directly to D'Angelo's desk and said "I'm done. I can't take it anymore. I want something done right now." D'Angelo went with Cherry to discuss the situation with Pena, who asked whether Reasoner was just "horsing around." Pena then contacted Nikki Jordan in the human resources department, who opened an investigation into the complaint. Shaw Coastal concluded that it could not determine whether the conduct had occurred because there was not enough evidence and it was "one word against the other." The company took no further action.

After the meeting with human resources, Cherry reported to D'Angelo that Reasoner was intentionally bumping into him in the office, laughing at him, and "flipping [him] off." Neither D'Angelo nor Pena was responsive to Cherry's complaints. Cherry reported Reasoner's behavior to Shaw Coastal's management, and on September 27 submitted a resignation letter citing the harassment and the company's failure to address it as the reason for his leaving the company. After Cherry submitted his resignation, Jordan informed him that Reasoner had been fired.

Cherry filed suit in district court, alleging battery, sexual harassment, and retaliation, and requesting punitive damages.[1] After the plaintiff rested his case, Shaw Coastal filed a motion for judgment as a matter of law pursuant to Rule 50(1)(a) of the Federal Rules of Civil Procedure. The district court granted the motion as to punitive damages, as well as Cherry's loss of overtime and retaliation claims. The sexual harassment claim was submitted to the jury. During deliberation, the jury wrote a note to the judge asking whether Mike

---

[1] A claim for intentional infliction of emotional distress as well as a cross-claim brought by Thornton were dismissed prior to trial.

4

Reasoner had "to be considered a homosexual for sexual harassment to be proven." The judge read the question in open court and responded over plaintiff's objection that "there must be credible evidence that Mr. Reasoner is or was homosexual," which "may be proven if you find . . . that Mr. Reasoner intended to have some kind of sexual contact with Mr. Cherry." The jury then issued a verdict finding that Cherry was sexually harassed, that there was some indication that Reasoner has "sexual interest in males," that the conduct was sufficiently severe or pervasive to create a hostile work environment, and that Shaw Coastal knew or should have known of the harassment and failed to take

No. 11-30403

prompt remedial action.[2] The jury also found in Cherry's favor as to his claim of battery.[3]

The district court then granted Shaw Coastal's motion for judgment as a matter of law and entered judgment for Shaw Coastal on all claims except the battery claim. The court asserted that Reasoner's conduct toward Cherry "by itself does not amount to evidence establishing that Reasoner has a sexual interest in men," and stated that in order to show sexual discrimination, a plaintiff alleging same-sex harassment must "show that the harasser made explicit or implicit proposals of sexual activity and provide credible evidence that

---

[2] The verdict form read as follows:
"1. Sexual Harassment by a Co-Worker
    a. Do you find that Mr. Cherry was subjected to conduct that he considered unwelcome during his employment at Shaw Coastal?
    b. Do you find that the unwelcome conduct included an explicit or impliit sexual proposal?
    c. Do you find that there is some indication that Mr. Reasoner has sexual interest in males?
    d. Do you find that the conduct was sufficiently severe or pervasive such that a reasonable person in Mr. Cherry's position would find that Shaw Coastal created a hostile work environment?
    e. Do you find that Shaw Coastal knew or should have known of the harassment and failed to take prompt remedial action?
1A. Damages for Sexual Harassment by a Co-Worker
    a. Do you find that Mr. Cherry suffered damages as a proximate or legal result of sexual harassment?
    b. Please state what sum of money, if any, would reasonably and fairly compensate Mr. Cherry for the following: Emotional Pain and Suffering, Inconvenience, Mental Anguish, and Loss of Enjoyment of Life
[Battery portion omitted]."
The jury answered "yes" to each question, and found that $500,000 would be reasonable compensation for Mr. Cherry's damages.

[3] The district court issued a remittitur as to the battery award, which the plaintiff did not accept. That issue is pending in district court. The district court entered a final judgment on the other claims pursuant to rule 54(b), giving us jurisdiction to consider those issues.

6

No. 11-30403

the harasser was homosexual." The court also found that the conduct was not severe and pervasive, stating that the touching only happened over 14 days and that Cherry was "overly sensitive to homoerotic teasing." The district court also found that Shaw Coastal took prompt remedial action in response to Cherry's complaints and therefore was not liable for any harassment.

## II.

Rule 50 rulings are reviewed *de novo*, taking the evidence in the light most favorable to the non-moving party. *James v. Harris County*, 577 F.3d 612, 617 (5th Cir. 2009).

## III.

As an initial matter, we review the district court's grant of the defendant's Rule 50 motion as to Cherry's claims of supervisor sexual harassment, retaliation, and for punitive damages. Punitive damages are appropriate where the plaintiff has shown malice or reckless indifference on the part of the defendant. *Kolstad v. American Dental Association*, 527 U.S. 526 (1999). While we conclude below that Shaw Coastal did not promptly and effectively respond to the harassment, the defendants' behavior did not rise to the level of malice or reckless indifference. Shaw Coastal had a policy in place that provided a clear procedure for addressing sexual harassment issues, and although its response here was far from prompt, it did ultimately respond to Cherry's complaints by ensuring that he and Reasoner would no longer be on the same survey team.

As to the retaliation claim, Cherry did not show that he suffered any adverse employment action as a result of complaining of harassment. To make out a claim for retaliation, the plaintiff must show that "(1) [he] participated in

7

a Title VII protected activity, (2) [he] suffered an adverse employment action by [his] employer, and (3) there is a causal connection between the protected activity and the adverse action." *Stewart v. Mississippi Transport Comm.*, 586 F.3d 321, 331 (5th Cir. 2009). Both Cherry and Thornton conceded that overtime was eliminated when the primary survey job they were assigned to was cut back. The lack of surveying work available, confirmed by Thornton, Cherry and Shaw Coastal, also explains Cherry's assignment to maintenance tasks. The changes did not affect Cherry alone but applied to everyone in his position, and therefore cannot be characterized as retaliatory.

We now turn to Cherry's claim of sexual harassment, on which the district court overturned the jury's verdict. Title VII prohibits discrimination "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a)(1). Sexual harassment is a form of discriminatory treatment, and applies in any situation where there is discrimination "because of" sex, whether it be between members of the same or opposite sexes. *Oncale v. Sundowner Offshore Servs.*, 523 U.S. 75, 81 (1998).

The Supreme Court held in *Oncale* that a plaintiff may support a claim of same-sex harassment by providing some "credible evidence" that the harasser is homosexual. *Id.* In *La Day v. Catalyst Technology*, 302 F.3d 474, 480 (5th Cir. 2002), we identified two types of evidence that could serve as credible evidence of homosexuality: (1) evidence that the harasser "intended to have some kind of sexual contact with the plaintiff rather than to merely humiliate him for reasons unrelated to sexual interest, or (2) evidence that the harasser "made same-sex sexual advances to others, especially to other employees." *La Day* at

8

480. Thus if a plaintiff presents evidence that he was harassed by a member of the same sex, and that the harassment was sexual rather than merely humiliating in nature, that evidence is sufficient to support a verdict in the plaintiff's favor.

Cherry presented more than sufficient evidence to support the conclusion that Reasoner's harassment was sexual in nature. The text message "I want cock" could be taken as an explicit sexual proposition, as could Reasoner's invitation to Cherry to stay at his house and wear his underwear. Reasoner repeatedly physically touched and caressed Cherry's body, which was apparently offensive enough that Thornton, having witnessed the behavior, felt compelled to complain to their supervisor. This goes far beyond the evidence we held sufficient to support a same-sex harassment claim in *La Day,* where the plaintiff presented evidence that the same-sex harasser told him that he was jealous of his girlfriend, and "poked" him in the anus on one ocassion. *Id.* at 481. Taking the facts in the light most favorable to the verdict, the evidence supports the conclusion that the harassment was explicitly or implicitly sexual in nature.

The district court also found that the evidence was insufficient to support the jury's finding that the harassment was severe and pervasive. Sexual harassment is actionable under Title VII only if the harassing conduct is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment. *Harvill v. Westward Commc'ns,* 433 F.3d 428, 434 (5th Cir. 2005) (citing *Meritor Sav. Bank v. Vinson,* 477 U.S. 57, 67 (2986)). Evaluating whether harassment is sufficiently severe or pervasive to trigger Title VII requires an analysis of "all of the circumstances, including the frequency of the discriminatory conduct, its severity, whether it is

physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonable interferes with an employee's work performance." *La Day*, 302 F.3d at 482.

The district court found that even if the harassment in this case was "because of" sex, it was "a long way from conduct that the Fifth Circuit has found severe or pervasive." We disagree. "Deliberate and unwanted touching of . . . intimate body parts can constitute severe sexual harassment." *Harvill*, at 428. As noted above, this court has held that a single incident in which a harasser briefly touched the plaintiff's anus, along with the statement that the harasser was jealous of the plaintiff's girlfriend, was sufficient to satisfy the severe or pervasive requirement. *La Day* at 483. In this case, Reasoner repeatedly touched Cherry in a manner that Thornton described as "like I do my wife." Reasoner also touched Cherry's rear end on one occasion. Based on those interactions, coupled with the text messages that Reasoner sent Cherry, the jury was reasonable in determining that the harassment was severe and pervasive. The district court erred in granting the defendant's Rule 50 motion.

The district court also found that the evidence was insufficient to support the jury's finding that Shaw Coastal was liable for Cherry's harassment: An employer that knows or should know about coworker harassment is required to appropriately respond to it. *Harvill*, 433 F.3d at 437. An employer can escape liability if it takes remedial action calculated to end co-worker harassment as soon as it knows or should know of the harassment. *Sharp v. City of Houston*, 164 F.3d 923, 929 (5th Cir. 1999).

We conclude that the evidence supports the jury's finding that Shaw Coastal did not take prompt remedial action. Both Thornton and Cherry

complained to their supervisors to no avail. Thornton began reporting the harassment as early as March, and made an estimated ten complaints about it in two months. Cherry began making complaints in May. D'Angelo, the supervisor to whom Thornton and Cherry initially complained, was required by company policy to report those complaints to human resources, but instead continued to insist to both Thornton and Cherry that Reasoner was just "horsing around." During that time, Reasoner continued touching Cherry and sending him text messages. When the human resources office finally did become involved, it initially took no action despite the fact that Cherry continued to report that Reasoner was harassing him. Cherry presented a number of documented complaints and had concrete proof of text messages, and Thornton was an eyewitness who supported his allegations. The human resource staff's decision not to act because of "insufficient evidence" could reasonably be interpreted as a failure to take prompt remedial action.

IV.

For the foregoing reasons, we conclude the district court correctly found that Cherry's evidence was insufficient to permit a jury to award punitive damages or to issue a verdict in his favor on his claims of retaliation.

However, on the remaining claims before us we VACATE the court's order granting judgment as a matter of law in favor of the defendant and REMAND this case to the district court with directions to enter a judgment on the verdict with respect to the claims presented to us in this appeal.

VACATED and REMANDED.